IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NANCY J. RHINE,

    Plaintiff,

  v.

JO ANNE BARNHART,
Commissioner of Social Security,

    Defendant.

No. C 04-01839 JSW

**ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Now before the Court is the motion of Plaintiff Nancy J. Rhine ("Rhine") for summary judgment and the cross-motion of the Commissioner of the Social Security Administration ("Commissioner") for summary judgment. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the administrative record and considered the parties' papers and the relevant legal authority, the Court hereby DENIES Rhine's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

Rhine brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner denying her request for Social Security benefits and supplemental income. Rhine is a 53 year old woman with a Bachelor of Arts degree. (Certified Transcript of Record Proceedings "Tr." at 74, 225.) Her prior employment includes experience in the online computer industry as a vice president, director of development,

1   and director of programs.  (Tr. at 93-100.)  Prior to her managerial experience, she worked as a
2   self-employed bookkeeper.  (Tr. at 93-100.)  Rhine has not had substantial gainful employment
3   since April 1, 2000.  (Tr. at 80.)  She states she is unable to work due to chronic, intermittent,
4   eight-sided lower back pain at the L3-L4, L4-L5, and L5-S1 levels with some muscle spasms.
5   (Tr. at 18.)  She claims that this pain is present throughout the day and prevents her from being
6   able to sit comfortably for more than ten minutes.  (Tr. at 210, 240, 252.)

7   For purposes of this disability claim, Rhine's treatment for lower back pain began in late
8   1999.  (Tr. at 17.)  An MRI of her lumbar spine in January 2001 revealed a disc bulge, facet
9   hypertrophy, mild central canal stenosis, diffuse hypertrophy of the ligamentum flavum, mild
10  degenerative disc disease and right lateral disc protrusion at level L5-S1 with a mild mass effect
11  on the exiting nerve root.  (Tr. at 160-61.)  In May 2002, Rhine began visiting Dr. Robert J.
12  Hines who diagnosed her as having an adjustment disorder, lumbar degenerative disc disease,
13  lumbar facet arthopathy, and idiopathic scoliosis.  (Tr. at 193.)  Dr. Hines presented Rhine with
14  a surgical intervention option for treatment in August 2002.  (Tr. at 188.)  However, a more
15  conservative treatment approach was taken at that time, and sometime later Rhine lost "fervor
16  for seeking a surgical solution."  (Tr. at 188.)

17  In support of Rhine's appeal for Social Security disability benefits, Dr. Hines wrote,
18  "Her pain is predictably unpredictable and forces her to spend a significant amount of time
19  lying down or doing nothing.  Please let us reiterate that we feel she is not employable in any
20  full or part time job because no employer could tolerate the need she has to do work
21  unpredictably."  (Tr. at 210.)

22  The course of her treatment included pain medications, epidural spinal injections,
23  median branch blocks, and physical therapy.  (Tr. at 18.)  While Dr. Hines stated that Rhine was
24  unable to be employed as a result of her condition, Rhine had previously seen Dr. Howard
25  Sturtz in September 2001 who diagnosed her with having spinal stenosis and indicated she did
26  have the capacity to perform a level of sedentary to light exertional work.  (Tr. at 19, 178.)
27  Additionally, Rhine was evaluated by two state agency physicians who also found that she was
28  capable of "performing a light exertional level of work."  (Tr. at 19, 179-186.)

2

A psychiatric evaluation of Rhine performed by Dr. Michael Dietrick resulted in no findings of "impairment attention or concentration" as a result of her back problems. (Tr. at 204.) While the administrative law judge ("ALJ") adopted Dr. Dietrick's report on Rhine's psychiatric condition, he did conclude that "as a result of her physical pains (rather than any psychiatric conditions), the claimant has a 'moderate' impairment with regard to her ability to concentrate." (Tr. at 20.)

In addition to no longer working, Rhine claims her daily routine has changed as a result of her back pain. Rhine states that her husband helps out around the house more and that her daily activities are now limited to reading, making little fountains, doing crossword puzzles, attending church, and socializing with friends. (Tr. at 242-43.) Additionally, Rhine stated that she has traveled by car to visit her daughter in Palo Alto and traveled by plane to visit her parents in Arizona. (Tr. at 247.)

Rhine filed an application for social security disability insurance benefits on July 3, 2001 under Title II of the Social Security Act ("Act"), alleging she had disabilities beginning April 1, 2000. (Tr. at 74-76.) Her initial and reconsideration applications were denied on the basis that her condition was not severe enough to prevent her from working. (Tr. 27-30, 33-36.) Rhine timely filed a Request for Hearing on January 19, 2002. (Tr. at 40-41.) An ALJ conducted a hearing on May 29, 2003. (Tr. at 15.) Rhine and a vocational expert ("VE"), Robert Rashke, both testified at the hearing. (Tr. at 15.)

The ALJ found that Rhine's alleged inability to work was not fully credible given her own testimony about her daily activities and corroborating accounts provided by Dr. Sturtz and the two state agency physicians who had examined her. (Tr. at 17.) Additionally, the ALJ relied on the VE's conclusions which considered Rhine's age, past experience and other transferable skills in its analysis. (Tr. at 21-22.) The VE testified, after accounting for Rhine's restrictions based on her diagnoses, that she could be engaged in substantial gainful employment in the national economy as a Dispatcher, Service Clerk, Production Coordinator, or Order Clerk. (Tr. at 21-22, 253-264.) The ALJ found that while Rhine's degenerative disc disease is a severe impairment, she still has the ability to perform a sedentary exertional level of

3

1  work with some postural and mental limitations, including a sit/stand option every 10 to 15
2  minutes. (Tr. at 19, 22.) Accordingly, the ALJ concluded that Rhine was not disabled within
3  the meaning of the Act and denied social security insurance benefits.
4      Rhine then filed a request for review of the ALJ's unfavorable decision, which the
5  Appeals Council denied. (Tr. at 6-11.) Having exhausted her administrative remedies, Rhine
6  commenced this action for judicial review of the ALJ's decision.

## ANALYSIS

**A.  Standard of Review of the ALJ's Decision to Deny Social Security Benefits.**

    A federal district court may not disturb the ALJ's decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). To determine whether substantial evidence exists, courts must look at the record as a whole, considering both evidence that supports and undermines the ALJ's findings. *Reddick*, 157 F.3d at 720. The ALJ's decision must be upheld if the evidence is susceptible to more than one reasonable interpretation. *Id*. at 720-21.

**B.  Legal Standard for Establishing a Prima Facie Case for Disability.**

    The ALJ follows a five-step sequential evaluation process to determine whether the claimant is disabled. Id.; 20 C.F.R. § 416.920. First, the claimant must not be engaged in substantial gainful employment. 20 C.F.R. § 416.920(b). Second, the claimant's impairment must be "severe." 20 C.F.R. § 416.920(c). Third, when the claimant has an impairment that meets the duration required and is listed in Appendix 1 (a list of impairments which are presumed severe enough to preclude work located in subpart P of part 4040 of 20 C.F.R. § 416.920), or is equal to a listed impairment, benefits are awarded without considering the claimant's age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must assess all relevant medical and other evidence in the claimant's case record and make findings to

4

1  determine the residual functional capacity of the claimant to do his or her past work.  20 C.F.R.
2  § 416.920(e).  If the claimant is able to do his or her past work, payments are denied.  *Id.*
3  Finally, if the claimant cannot perform his or her past work, the ALJ must then determine
4  whether they are able to do any other type of work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If
5  the ALJ finds that the claimant is not disabled at any step along the way, the claimant is not
6  disabled and there is no need to continue subsequent steps of the analysis.  20 C.F.R. §
7  404.1520.

8       In steps one through four, it is the claimant who carries the initial burden of proving the
9  disability.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  Once the claimant has
10  established that he or she is unable to continue with past work, at step five in the analysis, the
11  burden is shifted to the ALJ to show that the claimant can perform other substantial gainful
12  work.  *Id.*  Here, after going through the complete evaluation process, the ALJ denied Rhine's
13  application for benefits at step five, concluding that Rhine was limited to a sedentary exertional
14  level of work, and that a significant number of such jobs existed in the national economy.  (Tr.
15  at 22.)

16  **C.  Substantial Evidence Supports the ALJ's Determination That Rhine is Not Disabled.**

18       Rhine asserts that the ALJ erred by concluding that her physical impairments do not
19  prevent her from performing any kind of work.  Her assertion is based on two propositions:  (1)
20  that the ALJ improperly evaluated Rhine's credibility; and (2) that the ALJ improperly rejected
21  the opinion of Rhine's treating doctor.  In response, the Commissioner contends that the ALJ's
22  conclusions were proper because they were not based on legal error and were supported by
23  substantial evidence.  The Commissioner argues the ALJ properly concluded Rhine lacked
24  credibility as a result of inconsistencies in the testimony and a lack of objective medical
25  evidence found in the record to support Rhine's complaints.  The Commissioner also argues that
26  the ALJ properly evaluated the medical testimony and did not err in rejecting the treating
27  physician's opinion.

5

**1.      The ALJ did not err when evaluating Rhine's credibility.**

Rhine contends the ALJ erred in evaluating her credibility and further did not provide clear and convincing reasons for rejecting her subjective complaints. The ALJ cannot reject credibility, "solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc). When an ALJ does reject a claimant's subjective complaints, the judge must provide sufficiently specific findings to support that conclusion. *Id.* at 347. Credibility findings arise from "ordinary techniques of credibility evaluation" such as inconsistent statements in the testimony. *Id.* An ALJ who finds testimony lacking credibility must "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

Rhine's daily activities are sufficient to support the ALJ's finding that there were inconsistencies in her testimony thus demonstrating a lack of credibility. A claimant who engages in daily activities such that involve physical tasks which transfer to the work environment give proper credence for an ALJ to conclude that "the claimant's pain does not prevent the claimant from working." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Rhine testified that her daily activities include fountain-making, reading, doing crossword puzzles, socializing with friends, attending church, light housekeeping, some errand-running, and occasional commutes up to one hour, in addition to occasional flights of more than one hour. (Tr. at 103, 242-47.) Using specific findings based on Rhine's testimony and objective medical evidence, the ALJ noted, "the physical and mental capabilities requisite for performing many of these household tasks and social interactions replicate those necessary for obtaining and maintaining employment." (Tr. at 21.) Thus, the ALJ properly considered inconsistencies in Rhine's testimony in evaluating her credibility and ultimately chose to accept some of Rhine's complaints in part and reject those where she indicated she could not perform any work at all.

6

In addition to the inconsistencies in testimony, the ALJ also properly reviewed the entire record, including objective medical evidence for signs to support Rhine's complaints. Social Security Ruling 96-7 (to determine plaintiff's credibility, the ALJ "must consider the entire case record, including objective medical evidence"). While an ALJ properly can review objective medical evidence in assessing a claimant's credibility, an ALJ cannot find lack of credibility solely in the use of objective medical evidence. *Bunnell*, 947 F.2d at 347. Here, however, the ALJ found inconsistencies in the testimony along with objective medical evidence which did not support Rhine's complaints. Both findings form the basis for his conclusion of Rhine's lack of credibility.

The ALJ reviewed Rhine's medical files noting her treatment plan and her lack of mobility impairment. *See Fair*, 885 F.2d at 604 ("it is essential to investigate all avenues presented that relate to subjective complaints, including . . . [t]reatment other than medication, for the relief of pain"). In review of the medical evidence, the ALJ noted specifically that examining physicians found Rhine capable of "heel-to-toe walk[ing] without difficulty," "walking in a normal manner," her "ab[ility] to lie down and get up from examination table easily," and "no motor, sensory nor reflex deficits." (Tr. at 166, 177-78). Further evidence revealed that while Rhine tried a number of treatment options and had at one point considered surgery a viable option for pain management, she later "lost her fervor for seeking a surgical solution." (Tr. at 188.)

In rejecting Rhine's complaints in part, the ALJ used sufficient facts to support his rejection based on the inconsistencies in the testimony and the objective medical evidence that did not support Rhine's complaints of being unable to work in any capacity. Accordingly, the ALJ did not commit legal error in his rejection of Rhine's credibility and appropriately cited specific findings to support his decision.

**2.    The ALJ did not err not when evaluating the medical evidence.**

Rhine asserts that the ALJ improperly rejected the opinion of her treating physician, Dr. Hines, and instead accepted contradictory opinions of examining physicians. While a treating

7

physician's opinion is given substantial weight, it is not binding on the ALJ. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). When an ALJ disregards a treating physician's opinion, the judge must set forth, "specific and legitimate reasons supported by substantial evidence in the record for doing so." *Lester*, 81 F.3d at 830. The ALJ can meet this burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Accordingly, "opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Id.*

There is conflicting evidence regarding the severity of Rhine's impairment, specifically whether she is able to perform any kind of work at all. Rhine was examined both by Dr. Hines, her treating physician, and Dr. Sturtz. Dr. Hines concluded that Rhine was "not employable in *any* full or part time job." (Tr. at 210 (emphasis added).) Whereas, Dr. Sturtz, along with two state agency physicians, concluded that she was able to perform a level of sedentary to light exertional work. (Tr. at 179-187.) The ALJ set forth a detailed account of the factual summary, noting specifically that Rhine's MRIs revealed only "mild degenerative disc disease; including 'mild' lumbar scoliosis and 'mild' central stenosis at the L4-L5 level." (Tr. at 18.) Additionally the ALJ documented from the record Rhine's ability to walk without difficulty, and her "intact motor strength, senses, and reflexes." *Id.* Based on the objective medical evidence found within the record, along with the opinions of Dr. Sturtz and the two state agency physicians who reviewed Rhine's medical files, the ALJ was proper in not accepting the entirety of Dr. Hines' opinion that Rhine could not work in any capacity. *See Magallanes*, 881 F.2d at 751. The ALJ set forth specific factual findings which indicated that Rhine could engage in sedentary work with a required sit/stand option every 10 to 15 minutes. This finding was a proper evaluation of the medical opinions supported by substantial medical evidence in the record.

**CONCLUSION**

For the foregoing reasons, this Court hereby DENIES Rhine's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

**IT IS SO ORDERED.**

Dated: September 19, 2005

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE